PEDRO MUÑOZ JIMÉNEZ, Plaintiff and Appellee, *v.* R. FABIÁN & CO., SUCRS., ET AL., Defendants and Appellants.

No. 10149.   Argued April 3, 1950.—Decided May 31, 1950.

*F. Prieto Azúar* for appellants.   *Ruiz Suria & Ruiz Suria* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

An action for damages was brought against R. Fabián & Co., Sucrs. and the Maryland Casualty Co. by plaintiff Pedro Muñoz Jiménez married to Providencia Amato, on behalf of the conjugal partnership existing between them. The lower court, in granting the complaint, stated among others, the following findings of fact:

"5. On May 5, 1947, about eleven in the morning, Providencia Amato de Muñoz entered La Bayamonesa store in order to buy a boy's suit and some lace.   Upon entering the

said establishment she was carrying a package of materials which she had bought in another shop. Mrs. Muñoz entered through the right door and asked a young man for some goods. After being directed she turned to the left of a passageway but suddenly slipped and fell forward from the higher floor which was of black and white tiles, suffering injuries on the nose, on the right shoulder with the end of a counter and on her shin bone with the edge of the step. She also received injuries on her cheekbones and her stomach. In order to go from one part of the store to the other she had to go through said passageway. *When the accident happened, Mrs. Muñoz was looking forward and not toward the sides.* ...

"......................

"7. This lady had never gone through said passageway, so she assumed that the floor was at an even level, that there was no step. Previously, she had been once or twice in "La Bayamonesa," but never in the rear or back part of the store. It seemed to her that the floor was at an even level due to the fact that the merchandise in the showcases was at the same height.

"8. The place of the fall consisted and consists of a passageway, open to the customers of the establishment, which connects both wings of the latter, forming a double square (See Exh. 'D'). Said passageway was and is quite narrow. On both sides there were counters and showcases and on the counters and showcases there was a large display of towels, bedspreads, bed clothes and other merchandise apparently placed at the same height or level.

"9. *The merchandise did not obstruct the range of vision and the hall was clear and without any obstacles except for a step that was and is located half-way across the passageway said step consisting of two descents* (See Exh. 'D'), *of proper construction, comfortable and without a banister or warning of any kind to indicate its existence in said place.* The tread is 18 inches long and the riser $5\frac{1}{4}''$ and $5\frac{1}{8}''$ respectively.

"10. Both floors of the passageway are connected by steps, the upper level being of black and white tiles $8'' \times 8''$, like the tiles of the step, while the lower level is of white ceramics. *In other words, one floor looks black and white while the other looks all white. The difference in color between both floors may be noticed at a distance of 12 feet before reaching the step if the hall is lighted and one is looking down to the floor.*

456

(See the minutes of the view). The upper floor is on the left wing. The difference in levation is 10″.

"11. Said passageway was lighted by 4 fluorescent lamps of two tubes each, 48″ each tube. *One of these lamps was almost over the step.* Due to the fact that the natural light in the store is very poor, the employees in charge of the establishment habitually lighted the lamps (12 in all) as soon as it was opened, keeping them burning until it was closed in the afternoon.

"*In connection with the lights, the evidence is contradictory:* that of the plaintiff tended to prove that the store was lighted by natural light while that of the defendant, that all the lights in the store were turned on. From the inspection we made we are inclined to believe *and we so decide, that the lights of the store and especially those in·the passageway were turned on.* The natural light which reaches the hall is so poor that when the lights on the passageway are turned off, it is almost impossible to go through the latter, because it is so dark, and much less work in it. *It would be unexplainable that the owners of the establishment should keep the passageway dark.*" (Italics ours.)

Even though it is found among the conclusions of law, the lower court also stated the following:

"III. We have considered it proved that the step was properly constructed; *that its construction offered no danger nor was it dangerous if adequately lighted; that the passageway as well as the step were lighted;* that the merchandise placed on the booths, showcases and counters around the hall *did not block the vision and that said hall, with the sole exception of the step, was clear. It was also proved that a person who might go through said hall, from west to east could notice the difference in colors in the floor as well as the step from a distance of 12 feet before reaching the step.*

"On the other hand it was shown that the merchandise placed on the showcases and counters, due to the uniform height it reached, seemed to be placed on the same level and for that reason the said lady, who had never passed through said passageway and was unaware of the existence of the step, *assumed* that the floor had no obstruction but that it was all on the same level; that while she walked through the passageway *she did not look down to the floor and that there was no warning or notice to advise the customers of the existence of the step.*" (Italics ours.)

After stating the general principles regarding the legal duty of an owner of an establishment to keep it in reasonable safe conditions for the customers who expressly or impliedly are invited to enter it, as well as to give warning of any *latent or concealed danger* which might exist and that said owner is not responsible for the damages which might result from dangerous conditions which might be obvious or known by the injured person, for since he is not his customer's insurer he only owes him an average decree of care, and after also setting forth the general rule applicable to Mrs. Muñoz that she should have had reasonable care and observe all that which was apparent to the naked eye while walking through the store, it reached the following legal conclusions:

'The existence of the step, considered by itself, *would not be enough to found on it a negligence charge on said defendant* (*Albachten* v. *Golden Rule*, 160 N. W. 1012), but when considered in connection with all the circumstances that surround this case, *especially that the merchandise display on all sides of the hall attracted the attention of the customers*, made it dangerous for a customer who, like Mrs. Muñoz was not aware of its existence.

"     .     .     .     .     .     .     .     . .     .

"Under all these circumstances, it was the duty of the defendant to advise its customers of the existence of the step so that they could avoid the danger, *O'Brien* v. *Tatum*, 84 Ala. 186, 4 So. 158 and other cases cited in the afore-mentioned annotation, on page 189.

"     ..     .     .     .     .     .     .     .     .

"Because of the reasons we have just stated we decide that the defendant in question was negligent in this case *for failure to have any warning or notice which would indicate to the customers the existence of the step* and especially to those who were not aware of its existence and that said negligence is the direct and inmediate cause of the accident and, consequently of the injuries and damages that Mrs. Muñoz suffered.

"Of course if it had not been for the fact that the merchandise on display in the passageway *attracted the attention of Mrs. Muñoz,* and that she was unaware that there existed a step in the hall, we would have hesitated very much before deciding

that the aforesaid defendant was negligent for lack of warning or notice which would indicate the existence of the step as the latter was plainly visible." (Italics ours.)

Consequently, it rendered judgment ordering the defendants to pay to the plaintiff the sum of $3,129.50 for damages, $300 for attorney's fees, plus the costs.

Not satisfied with this decision, the defendants appealed and assign five errors. Except for the fifth which refers to the amount of compensation granted, the other four raise, in different ways, a single question, that is accepting as correct the findings of fact of the lower court, it committed error of law in deciding that the defendant R. Fabián & Co. was negligent in not placing a notice indicating the presence of the step and in not deciding that Mrs. Muñoz's negligence was the immediate cause of the accident. We are not asked, therefore, to reverse the judgment herein because of manifest error in weighing the evidence but rather that we apply the rule that "The weighing of the evidence is one thing and the legal effect thereof is another." *Rodríguez* v. *Pagán*, 67 P.R.R. 321; *Mercedes Bus Line* v. *District Court*, 70 P.R.R. 656, and applying it, the appellants in our opinion are correct.

▆▆▆ In the findings of fact the lower court referred to the record of the inspection. It stated therein in part the following:

"(1) When the passageway is lighted the difference in the color of the floor is distinguishable, if one is looking at the floor; (2) the step is distinguishable from about a distance of 12 feet when one walks through said passageway eastwardly;... (5) when the lights are turned off the passageway is left in complete darkness; (6) the passageway has on its sides and on the front stools or showcases and counters, all full of merchandise."

The inspection served as a basis for the court to decide that, as a matter of fact, the aisle or passageway through which the plaintiff's wife was walking was lighted by several fluorescent lamps, since when the lights are turned off said

aisle becomes completely dark; that the merchandise on the sides of the aisle did not obstruct the vision; that because the tiles of both floors are of different colors, one floor looks black and white and the other white and that the step can be seen at a distance of 12 feet. If all this is so and the court further found that, when the accident occurred Mrs. Muñoz "looked forward, not sideward," and that the merchandise placed on the shop windows, showcases, and counters along the sides of the aisle "did not obstruct the vision," its legal conclusion to the effect that the existence of the step "considered in connection with all the circumstances that surround this case, *especially that the merchandise display on all the sides of the aisle attracted the attention of the customers, made it dangerous for a customer, who, like Mrs. Muñoz was not aware of its existence*," and that consequently the defendant was negligent in not having any warning or notice which would indicate the presence of the step, is completely wrong. This is more so when the lower court says immediately after that "if it had not been for the fact that the merchandise on display in the aisle *attracted* the attention of Mrs. Muñoz" it would have hesitated very much before deciding that the defendant was negligent in not having the notice indicating the existence of the step "as it could be plainly seen." It is obvious that the lower court contradicts itself for it had already decided, as a matter of fact, that Mrs. Muñoz when the accident happened, "looked forward, not sideward." So that, eliminating the fact pointed out by the court as a basis for its verdict, we have to conclude that, as a matter of law, it committed the error assigned.

The lower court erred, besides, in focussing and deciding this case as if governed by those cited in its opinion and which, as it stated, it copied from page 189 of the annotation in 33 A.L.R. In those cases the findings showed the existence of something dangerous in the commercial establishment, a trap or trap door, a hole, an elevator shaft and even a staircase hidden in some way from the sight of the customers,

and of which the injured person had no knowledge or did not have the opportunity to prevent from falling into the latter, due to the defendant's negligence in keeping said dangerous condition in his establishment. Those are not the facts in the present case. The step did not constitute *per se*, any danger, for the whole establishment and specially the step, was lighted as the court found, one fluorescent lamp being over it and it was visible to any person who walked through the passageway at a distance of about twelve feet before reaching it. The difference in color between the tiles of both floors was an additional factor to make the step visible to any person walking toward it. Rather the applicable cases are some of those cited in the aforesaid annotation, on page 212, as well as those included in the subsequent annotations in 43 A.L.R. 863, 868; 46 A.L.R. 1111, 1112; 58 A.L.R. 136, 141, and 100 A.L.R. 711, 730, which refer to accidents which happened in commercial establishments under circumstances similar to those proved to have existed in the present case.

Thus, for example, in *Haddon* v. *Snellenburg*, 143 Atl. 8–9 (Pa. 1928) it was decided that:

"It is not negligence per se or negligent construction in store or other public place to have one floor at lower level by a few inches than another; but, where such difference in elevation exists, unless lit by daylight, place should be sufficiently lighted to enable users to see step."

*Cleary* v. *Meyer Bros.*, 176 Atl. 187, 189 (N. J. 1935) was similar to the instant case, regarding the difference in color between both floors. There the plaintiff fell, on coming out of the rest room in a store, in front of which and at a distance of 24 inches, there was a step 8 inches high, because, as she testified, she assumed the flooring was all even and did not notice the steps. It was decided therein that:

"The burden of proving the charge of negligence contained in the complaint was on the plaintiffs . . . The proofs indicate that there was ample light at the entrance, that the step was

white or pink in color, while the covering on the main floor below the step was of a large black and white block design, and there was no suggestion made that it could not be plainly distinguished from the step.

"Negligence is a fact which must be shown. It will not be presumed. There is always a ·presumption against · negligence. . . .

"We do not think there was sufficient evidence to support the verdict in the present case. . . ."

Also in *Dickson* v. *Emporium Mercantile Co.*, 259 N. W. 375 (Minn. 1935) the complaint was dismissed. This case involved a difference in color between the floor levels and the adequate lighting of the step. In affirming the judgment it was said:

". . . The hallway floor is covered with brown linoleum. The floor of the lavatory is of white tile. . . . As plaintiff was entering the lavatory, another woman entered immediately ahead of her. Plaintiff remained therein but a brief period and upon leaving, evidently forgetting that she had stepped up to enter the lavatory and claiming that she was unaware that 'the step was there' stumbled and fell and thereby received the injury of which she complains and for which damages are sought in this action. The hallway and the lavatory were well lighted. There is no claim of any defect anywhere, nor is there any suggestion that the floor of either the hall or the lavatory was slippery or that any foreign substance on either floor had caused her to trip or slip. . . .

". . . Defendant was not an insurer of safety. As stated in the Albachten Case, page 382 of 135 Minn., 160 N. W. 1012, 1013: 'A shopkeeper is under legal obligation to keep and maintain his premises in reasonably safe condition for use as to all whom he expressly or impliedly invites to enter the same.' That is the general rule. (Citation) The question presented is not new."

Finally we examine *Boyle* v. *Preketes*, 247 N. W. 763 (Mich. 1933) which shows a situation almost identical to the case at bar. The facts show that a lady entered a candy store and restaurant for the purpose of taking her lunch. Approximately thirty feet from the entrance and across a

passageway there was a step which divided the front part of the store from the back. On the left side of the passageway there were showcases and on the other side there were some booths. The plaintiff while walking through said passageway fell when she reached the step, suffering injuries. She claimed in her complaint that the defendants' negligence consisted in their failure to maintain sufficient notice to apprise their customers of the difference in the floor levels in the two portions of their store, the failure to properly illuminate the passageway and the steps and in maintaining attractive showcases displaying merchandise in such a manner as to distract the attention of customers at a point where it became more dangerous by reason of steps and changes in floor levels. The court decided, p. 764:

"If defendants' premises were properly lighted, they were not required to post warnings of the steps between the two portions of their place of business. If the place was sufficiently lighted, the steps themselves constituted as effective notice to defendants' customers as it was possible to give.

"Touching plaintiff's claim that her attention was distracted by the display of defendants' wares, it may be said that there was nothing unusual as to the manner or character of the display . . . that can be held to lessen the degree of care which plaintiff was required to exercise for her own safety.

"Also construing the record most favorably to the appellant, there is no testimony which tends to sustain the allegation of the declaration that these steps constituted 'concealed dangers.' [The way in which the steps were built and the color contrast are described.] Neither the adjacent showcase at plaintiff's left nor the booths at her right in any way obstructed her range of vision. . . .

" 'It has long since been recognized that falling downstairs, where the mishap was not imputed to unknown or concealed defects, belongs to that class of ordinary accidents which ought to be imputed to the carelessness or misfortune of the sufferer.' (Citation.) . . .

"The following from the Garret Case, *supra*, [*Garret* v. *Butterfield Theatres, Inc.*, 261 Mich. 262] is quite applicable to the instant case: 'Different floor levels in private and public

buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. . . . The situation contained no element of a trap. A reasonably prudent person, watching where he is going, would have seen the step. Defendant is not under legal duty to prevent careless persons from hurting themselves. We think defendant was not guilty of negligence.' " (Matter in brackets ours.)

According to the findings of the lower court it committed error of law in deciding that the codefendant was negligent in failing to keep a notice warning the presence of the step in its store. The difference in color between the floor levels, the store's lighting, the absence of a concealed or latent danger in the step itself, the fact that the merchandise did not obstruct the vision of the person walking through the passageway and that it was clear and the additional fact that the difference in color as well as the step, could be seen at a distance of twelve feet, are all factors that tend to show and do show in our opinion, that the accident in this case was due to Mrs. Muñoz's own negligence in failing to notice and realize the existence of the step when she reached it while walking through the aisle of the store and that said negligence was the proximate cause of the accident she suffered. It was her duty to exercise reasonable care in the way she walked through the store and if she had done so the accident would not have happened.

The judgment of the lower court will be reversed and another rendered dismissing the complaint, with costs.