21 N.J. Super. 258 (1952)
91 A.2d 116
HENRY SZCZYTKO, ANNA SZCZYTKO, AND EDMUND J. SZCZYTKO, PLAINTIFFS-APPELLANTS,
v.
PUBLIC SERVICE COORDINATED TRANSPORT, ETC., ET AL., DEFENDANTS, AND IRVING LEVIN AND ABE LEVIN, PARTNERS TRADING AS L. & M. EXPRESS CO., AND PAUL MARINO, JR., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued July 28, 1952.
Decided August 29, 1952.
*260 Before Judges DANIEL J. BRENNAN, McLEAN and EWART.
Ernest Fasano argued the cause for the appellants (Quinn, Doremus, McCue & Russell, attorneys).
Abraham I. Harkavy, argued the cause for the respondents (Harkavy & Lieb, attorneys; Jerome S. Lieb on the brief).
The opinion of the court was delivered by DANIEL J. BRENNAN, J.S.C.
This is an appeal from the whole of the final judgment entered in favor of Irving Levin and Abe Levin, partners trading as L. & M. Express Co., and their driver, Paul Marino, Jr., at the conclusion of the plaintiffs' case. The trial court entered a judgment of no cause for action in favor of the defendants, Public Service Coordinated Transport, Nunzio Daniello, Sam Maita, Irving Levin and Abe Levin, partners trading as L. & M. Express Co., and Paul Marino, Jr., and against the plaintiffs, Henry Szczytko, Anna Szczytko, and Edmund J. Szczytko, with costs. With the consent of the attorney for the plaintiffs and *261 at the conclusion of the evidence introduced in behalf of these plaintiffs, the court directed that judgment of no cause of action be entered in favor of the defendant Nunzio J. Daniello, on motion of his attorney.
The judgment as rendered in favor of L. & M. Express Co. and its driver, Paul Marino, Jr., is the only one appealed from by the plaintiffs. The Appendix discloses that the complaint as there printed is in abridged form and relates solely to the controversy existent as between the plaintiffs-appellants and these named defendants-respondents. All omitted portions of the complaint are deemed unnecessary to be reproduced by counsel for the appellants so far as the issues involved in this appeal are concerned (Appendix foot of 1a). In the determination of this appeal, however, it is advisable that the facts as adduced before the trial court, as these related to all of the parties defendant to this litigation, be considered.
Reflected by the printed Appendix and briefs submitted by respective counsel here appearing, the facts appear to be as follows:
On September 7, 1949, the plaintiffs Henry Szczytko and his brother, Edmund, were the owners of a one-and-one-halfton 1941 Dodge truck, described as a G.I. vehicle with high fenders, large wheels and four-wheel drive, with panel. Henry Szczytko was driving this truck in which were riding his wife, Anna, and their infant child. Henry and his wife were both injured and the automobile damaged. Henry and his wife bring suit for her personal injuries, while Henry and his brother, Edmund, seek payment for the damage to their truck. It appears, however, that any claim made heretofore for the personal injuries sustained by Henry arising out of this accident were abandoned and, by consent, all counts in the complaint relating thereto were dismissed.
On the day in question Henry, his wife and their infant child were riding in the Szczytko truck. It was being driven by Henry in a northerly direction on Route 25-Edgar Road about at the intersection of Clinton Street, in the City of *262 Linden, shortly before noon. This is the main artery of traffic between the Jersey shore and Newark, New York and Elizabeth. Traffic was very heavy at this particular hour. The truck of the plaintiff was in the middle lane of a three-lane highway. Ahead of the Szczytko car was the automobile truck driven by Marino and ahead of the Marino car was an automobile truck driven by Daniello. The Marino truck is owned by the present defendants-respondents. There is a traffic light at the intersection of Clinton Street with Edgar Road-Route 25. The three trucks, i.e., the Daniello car, the Marino car, and the Szczytko car, proceeded along all in the middle lane, one in back of the other, all traveling in the same direction, viz., north. Daniello, Marino and Szczytko approached the intersection of Clinton Street and Edgar Road-Route 25 where the traffic light there maintained had turned red. All three stopped. A Public Service bus, driven in the same direction, had managed to get across the Clinton Street intersection just before the traffic light turned red and had come to a stop near the curb on the far corner to pick up and discharge passengers. After the light had turned green, the bus had started out diagonally left into the center lane and the line of traffic had started up. Daniello was just passing the green light before he came to the intersection across Clinton Street, and while the bus had his arrow lights on ready to pull out of the lane, Daniello applied his brakes very gently to let the bus go by, until he heard a little crash. Then Daniello stopped completely. The plaintiff-operator could not see past Marino's truck. The plaintiff-operator admitted that he had seen the Marino truck as it was moving forward and saw it stop, but was unable himself to stop and thus collided with the rear of the Marino truck, injuring Mrs. Szczytko and damaging the plaintiffs' automobile.
The suit against the several defendants sounds in negligence. The pretrial order recites the negligence of these defendants to be as follows:
"The negligence of the defendant Public Service consisting of the fact that the bus operated by its agent and servant pulled out from *263 a curb without warning into a path of traffic going in the same direction, thereby causing the vehicle operated by the defendant Daniello to stop suddenly; he in turn gave no warning, and as a result the vehicle operated by defendant Marino was compelled to stop suddenly without warning; and as a result the car operated by Henry Szczytko, in which his wife Anna was a passenger, crashed into the rear of vehicle driven by defendant Marino. The defendants Maita, Irving Levin and Abe Levin were the owners of the vehicle operated by Marino and thus are made defendants on the theory of agency. * * * Plaintiffs will also rely on the allegations of negligence set forth in the complaint."
The several defendants present these defenses as the same are set forth in the pretrial order in the following exact tenor:
"Defendant Public Service Coordinated Transport denies any negligence and furthermore denies ownership, operation and agency of the bus allegedly involved in the accident. Said defendant relies upon the affirmative defenses set forth in the answer, which are made a part hereof. Defendant Daniello admits ownership and operation of his vehicle, denies any negligence, asserts contributory negligence and joint enterprise. Defendants Maita, Irving Levin, Abe Levin and Marino admit ownership and operation and deny agency, deny negligence, assert contributory negligence and joint enterprise."
It is manifest from the pretrial process that the defendant Marino was "compelled to stop suddenly." The trial process is controlled by the statements in the pretrial order. Rule 3:16, "Pretrial Conferences"; Jenkins v. Devine Foods, Inc., 3 N.J. 450 (1950); Binder v. Green, 8 N.J. Super. 88 (App. Div. 1950). Cf. Sheild v. Welch, 4 N.J. 563 (1950). As to allegations of a pleading as an issue when not contained in pretrial order, see Schanerman v. Everett and Carbin, Inc., 18 N.J. Super. 248, 258 (App. Div. 1952).
At the close of the plaintiffs' case, the trial court, on motion of counsel for the defendants-respondents, directed a verdict in favor of the defendants and against the plaintiffs on the ground: "* * * this is a case in which certainly the sole negligence for this happening is directly in the hands and within the power of the operator of the plaintiffs' automobile. * * * It is unfortunate that somebody was hurt, *264 but it seems to me that the young lady who was hurt will have to look to her husband for compensation, not to any of the defendants." (Appendix, 95a) The present appeal by plaintiffs-appellants is from that judgment of no cause for action in favor of the present defendants-respondents.
The sole question for resolution here on appellate review, is as to the action of the trial court in directing judgment against the plaintiffs-appellants.
Our examination of the testimony offered in behalf of the plaintiffs fails to disclose any act of negligence on the part of the defendants-respondents. Negligence is a fact which must be shown; it will not be presumed. To establish a case of negligence and fix liability upon a defendant it is incumbent upon the plaintiff to prove some fact which is more consistent with negligence than with the absence of it. The mere showing of an accident causing the injuries or damage sued upon is not alone sufficient to authorize an inference of negligence. The existence of a possibility of a defendant's responsibility for plaintiffs' injuries and damage is insufficient. Our courts have held that "In the absence of direct evidence, it is incumbent upon the plaintiff to prove not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant and would exclude the idea that it was due to a cause with which the defendant was unconnected. While proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the part of the defendant." Callahan v. National Lead Co., 4 N.J. 150, 151, at pages 154-155 (1950), citing McCombe v. Public Service Railway Co., 95 N.J.L. 187 (E. & A. 1920); Woschenko v. C. Schmidt & Sons, 2 N.J. 269 (1949). Vide also Simpson v. Duffy, 19 N.J. Super. 339 (App. Div. 1952). Where there are no disputed facts or disputed inferences to be drawn from the uncontroverted facts, it devolves upon the court to declare the judgment which the law imposes. *265 Kaufman v. Pennsylvania R.R. Co., 2 N.J. 318 (1949). At the end of the plaintiffs' case sub judice, there was no proof of facts to prove negligence, nor from which an inference of negligence could be made and the trial court properly entered a judgment of dismissal. McCombe v. Public Service Railway Co., supra; Church v. Diffany, 124 N.J.L. 100 (E. & A. 1939); Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949); Alvino v. Public Service Railway Co., 97 N.J.L. 526 (E. & A. 1922); Grugan v. Shore Hotels Finance & Exchange Corp., 126 N.J.L. 257 (E. & A. 1940); Callahan v. National Lead Co., supra; McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229 (1950); Layton v. Healy, 12 N.J. Super. 459 (App. Div. 1951) and cases therein cited; Riley v. Weigand, 18 N.J. Super. 66 (App. Div. 1952); Gentile v. Public Service, etc., 12 N.J. Super. 45 (App. Div. 1951) and cases therein cited.
Rule 3:41 of our present court rules provides for the dismissal of actions. Rule 3:41-2 provides that
"After the plaintiff has completed the presentation of his evidence * * * he shall so announce to the court, and thereupon the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action or any claim against him on the ground that upon the facts and the law the plaintiff has shown no right to relief. * * * Unless the court in its order for dismissal otherwise specifies, a dismissal under Rule 3:41-2 and any dismissal not provided for in Rule 3:41, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits."
The attorney for the defendants-respondents moved for the dismissal of the action in behalf of his clients, under said Rule 3:41-2. The motion was granted and judgment entered accordingly. The trial court concluded that the plaintiffs have shown no right to relief upon the facts presented and the law here applicable. The trial court applied the rule that it must take as true all the evidence which supports the view of the party against whom the motion is made and must give the plaintiffs the benefit of all legitimate inferences which are to be drawn therefrom in their favor. *266 The action of the trial court in granting this motion and directing the entry of judgment in favor of the defendants-respondents was correct and proper in the instant cause, under the facts. Mulrooney v. O'Keefe, 98 N.J.L. 853 (E. & A. 1923); White v. Metropolitan Life Insurance Co., 118 N.J.L. 149 (E. & A. 1937); Oelschlaeger v. Hahne & Co., supra; Callahan v. National Lead Co., supra; McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229, at page 243 (1950).
The judgment of dismissal and the entry of judgment in favor of the defendants-respondents and against the plaintiffs-appellants is affirmed, with costs.
EWART, J.S.C. (dissenting).
I am constrained by my view of this case to respectfully dissent from the majority opinion which affirms the action of the trial court in having granted the motion of defendants Irving Levin and Abe Levin, partners trading as L & M Express Co., and Paul Marino, Jr., for a judgment in their favor at the conclusion of the plaintiffs' case.
The factual situation disclosed by the record is as follows:
On September 7, 1949 the plaintiffs Henry and Edmund Szczytko were the owners of a so-called "G.I. Army Truck" having high fenders, large wheels, and a four-wheel drive, which truck was being driven northwardly by Henry on Highway Route No. 25 in the City of Linden shortly before noon on the date mentioned. The highway at that place has three northbound lanes and three southbound lanes, separated by a traffic island. Henry was accompanied by his wife, the plaintiff Anna Szczytko, who was riding at his invitation as a passenger and who intended to visit her parents in the City of Newark while her husband was engaged in some work in that city. Traffic was very heavy. Henry was driving northwardly in the center lane. As Henry approached the intersection of Highway Route No. 25 and Clinton Street in the City of Linden, traffic came to a stop in obedience to a red traffic light at the intersection. Immediately ahead of Henry *267 in the northbound center lane was a large truck with a high closed steel body that prevented Henry from seeing ahead. That truck was owned by the respondents L & M Express Co. and was being driven by the respondent Marino. Immediately ahead of Marino in the center northbound traffic lane was another truck owned and driven by the defendant Daniello. All three trucks came to a stop for the traffic light at the intersection, plaintiffs' truck being the third in line south of the intersection and traffic light. In the meantime, a Public Service bus, likewise traveling northwardly on Route No. 25, had crossed the Clinton Street intersection just before the traffic light changed to red and had pulled over to or near the right-hand curb on the east side of Route 25, with the rear of the bus some five to eight feet north of the north line of Clinton Street, to discharge or take on passengers. The traffic light turned green. The truck driven by Daniello started across the intersection, followed by the truck driven by Marino which, in turn, was followed at a distance of from 8 to 12 feet by the plaintiffs' truck. Plaintiffs' truck was traveling in first gear at a speed of from eight to ten miles per hour following the truck driven by Marino. While the truck driven by Daniello was crossing the intersection and had about reached the north line of Clinton Street, the Public Service bus pulled away from the curb, traveling northwardly, in a diagonal direction and at the same time exhibiting directional arrows indicating a turn to the left, which was observed by Daniello and caused him to apply his brakes gently so as to slow up and let the bus proceed ahead of him and, as he testified, to give the truck behind him an opportunity to slow up, whereupon the defendant Marino brought his truck to such a sudden and abrupt stop that, in the words of plaintiff Henry Szczytko, the Marino truck "rocked." The front of plaintiffs' truck crashed into the rear of the truck driven by Marino and the plaintiff Anna Szczytko was thrown forward into the dashboard and windshield with sufficient force to break the windshield; six of her front teeth were knocked out; she *268 suffered other injuries and was taken to the hospital for treatment. And the front of plaintiffs' truck was damaged in the collision. Daniello testified that he did not come to a stop to let the bus precede him, but only slowed up and that it was only after he heard the crash in his rear that he brought his truck to a stop.
Both the plaintiffs Henry Szczytko and Anna Szczytko testified that Marino gave no signal or warning of his intention to come to a stop while crossing the intersection. And Henry Szczytko testified that the collision of the front of his truck with the rear of the Marino truck occurred while he was traversing the intersection and a short distance before he had reached the middle of Clinton Street which, it was testified, was about 45 feet in width.
Both Henry and Anna Szczytko testified that they saw the truck driven by Marino had come to a sudden stop just prior to the collision; that the plaintiff Henry Szczytko got his foot on the brake but had insufficient time to come to a full stop before striking the rear of the Marino truck. Henry Szczytko also testified that the G.I. truck he was driving required considerable pressure on both the accelerator and the brake to operate it.
The plaintiffs-appellants brought suit against Public Service Coordinated Transport, the owner and operator of the bus; against Daniello, the owner and operator of one of the trucks; and against the Levin brothers, partners trading as L & M Express Co. and against Paul Marino, Jr., driver of the L & M Express Co. truck.
When the plaintiffs rested, defendant Public Service Coordinated Transport moved for a judgment in its favor. After argument, the motion was granted. Defendant Daniello made a like motion and the same was granted with the consent of the plaintiffs. Defendants L & M Express Co. and Paul Marino, Jr., made a like motion and the same was granted after argument, the trial court holding (Appendix pp. 95A) that it was the sole negligence of the plaintiff Henry Szczytko which caused the accident.
*269 Plaintiffs-appellants have appealed only from the judgment in favor of the defendants-respondents Irving Levin and Abe Levin, partners trading as L & M Express Co., and Paul Marino, Jr. No appeal has been taken from the judgments in favor of Public Service Coordinated Transport and Daniello.
The question presented for determination is whether the trial court was justified in ruling as a matter of law that the accident was caused solely by the negligence of the plaintiff Henry Szczytko or whether sufficient proof of negligence had been submitted against the defendants-respondents to require them to put in a defense and let the question of negligence or contributory negligence be determined by the jury.
A common experience of those driving automobiles demonstrates, I think, that a sudden and abrupt stop, in moving traffic, without signal or warning creates a hazardous situation. Our Legislature has given recognition to that fact by providing in the Traffic Act (R.S. 39:4-126) that before stopping, the driver of any vehicle on a highway shall first see that such movement can be made in safety and when the operation of another vehicle may be affected by the movement, give a signal plainly visible to the driver of the other vehicle or pedestrian of the intention to make such move.
Plaintiffs were traveling in first gear at a speed of eight to ten miles per hour at a distance of eight to twelve feet behind the truck driven by Marino. According to the proofs Marino stopped very abruptly and gave no signal or warning of his intention so to do. As a matter of mathematical calculation, a vehicle traveling at a speed of ten miles per hour would travel between 14 to 15 feet in one second. Accordingly, it would appear that the plaintiffs had only the fraction of a second available to them from the time the Marino truck was seen to stop within which to bring their truck to a stop to avoid a collision. And it cannot be said that plaintiffs should reasonably have anticipated that the truck driven by Marino would come to a sudden halt after *270 the light had turned green and both the truck driven by Marino and by the plaintiff were in the act of crossing the Clinton Street intersection on Highway Route 25.
Under the foregoing state of facts, may it be said as a matter of law that Marino and his principals were entirely free of negligence which proximately caused or contributed to the occurrence of the accident and that the accident was caused solely by the negligence of Henry Szczytko? I think such a conclusion as a matter of law was not justified by the state of the proofs. Under such a state of facts, it seems to me that the questions of whether it was the negligence of Marino, or the negligence of the plaintiff Henry Szczytko, or indeed the joint negligence of both of them, which proximately caused the occurrence of the accident, was a question for determination by the jury and not by the court. And in that connection, it should be noted that the plaintiff Anna Szczytko, who was riding as a passenger at the invitation of her husband, was not chargeable with the negligence of her husband, if he were negligent, and that she would be entitled to recover if the jury should determine that the accident was proximately caused by the joint negligence of the defendant Marino and the plaintiff Henry Szczytko.
I make the following observations respecting the law applicable to the proofs in this case:
(1) The defendants' motion for judgment at the close of plaintiffs' case, for the purpose of the motion, in effect admits the truth of the evidence, and of every inference of fact that may be legitimately drawn therefrom, which is favorable to the plaintiffs, but denies its sufficiency in law; and where such evidence or inferences of fact will support a verdict for the plaintiff, such motion must be denied. Fine & Jackson, etc., Corp. v. Lehigh Valley R.R. Co., 110 N.J.L. 385, at 387 (E. & A. 1933); Scarano v. Lindale, 121 N.J.L. 549 (E. & A. 1939); McKinney v. Public Service, etc., 4 N.J. 229, at 243 (1950).
(2) The fact that plaintiff Henry Szczytko was driving his truck in heavy traffic, at a distance of only eight to twelve *271 feet behind the respondent's truck, and at a speed of eight to ten miles per hour, does not of itself constitute negligent conduct per se. In Simpson v. Snellenburg, 96 N.J.L. 518 (E. & A. 1921), the plaintiff, a boy 16 years of age, was riding a bicycle following at a distance of from 12 to 20 feet behind a truck traveling in the same direction. The enclosed body of the truck was of such size as to practically shut off visibility of the plaintiff of vehicles approaching on the highway from the opposite direction. The truck was traveling rapidly and the plaintiff was trying to keep up with it. Going down an incline, a farm wagon crossed the road in front of the truck and the truck driver applied his brakes hard and came to a sudden stop without signal or warning. To avoid colliding with the rear of the truck, the plaintiff was forced to turn out but was hit by a car coming in the opposite direction. The Court of Errors and Appeals affirmed a judgment in favor of the plaintiff. The late Justice Kalisch, speaking for the court, said:
"For it is a matter of common knowledge that conditions of traffic often become such that vehicles are necessarily much closer to each other than 8 feet, and, therefore, must be run and guided as to their speed by the vehicles ahead, and to denounce such conduct as negligence per se cannot be justified in good sense. The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not of itself constitute negligent conduct per se, but whether or not it was the negligence of the operator of the rear vehicle contributing to the negligence of the driver ahead in case of an accident to the former, depends upon all of the circumstances surrounding the happening of the accident, and almost invariably presents questions of fact for the decision of a jury." Italics mine.) (96 N.J.L. at pages 520-521.)
In Jackson v. Geiger, 100 N.J.L. 330 (E. & A. 1924), plaintiff's decedent was riding a bicycle on a public street in the City of Newark and was riding alongside of and to the right of a truck which had approached him from the rear and which was traveling in the same direction. Upon reaching a street intersection, the truck, without signal or warning, turned to the right; collided with the bicycle; and *272 plaintiff's intestate was killed. The trial court granted a nonsuit at the close of plaintiff's suit on the ground that the proofs showed the plaintiff's decedent was guilty of negligence. In reversing the judgment of nonsuit, the Court of Errors and Appeals held that the testimony made it clear that the question of contributory negligence was one for the jury and not for the court to decide (100 N.J.L. at page 332); that the mere fact that the decedent was riding in close proximity to the truck, and keeping up with it, does not constitute negligent conduct per se (100 N.J.L. at page 332); and that it was almost too plain for debate that the present case is one which, under the evidence, should have been submitted to the jury (100 N.J.L. at page 333). The court further held that plaintiff's intestate, in the exercise of ordinary care, was under no duty to anticipate that the truck driver would fail in his duty to indicate, by a proper signal or warning, that instead of proceeding straight ahead he intended to make a turn down Pennsylvania Avenue (100 N.J.L. at page 335).
In Goolsby v. Public Service Co-Ordinated Transport, 9 N.J. Misc. 1158 (Sup. Ct. 1931), plaintiffs were passengers riding in an automobile which was following a Public Service bus on Broad Street in Bloomfield. The proofs were that the bus stopped very suddenly without signal or warning and, in the words of one witness, the bus stopped so fast "`it really seemed to buckle.'" Plaintiff's automobile ran into the rear of the bus. In affirming judgment for the plaintiffs, the Supreme Court said that it considered that this testimony, in conjunction with other evidence, was sufficient "to raise the question of negligent operation of the defendant's bus as one of fact for the jury to determine."
In passing upon the defendant's request to charge, the Supreme Court on appeal made this significant statement:
"If these requests correctly stated the law, the effect would be, in application to the instant case, to relieve the defendant company of any liability for a sudden stopping of its bus in traffic and without warning. We think that the requests are not correct statements of *273 the appropriate legal principles and that the court did not err in refusing to charge them." (9 N.J. Misc. at page 1160.)
Wallach v. Lightening Electric Co., 10 N.J. Misc. R. 954 (Sup. Ct. 1932), is strikingly similar in principle to the case sub judice. There the car of the defendant was following the car of the plaintiff at a distance of eight or nine feet and at a speed of 20 miles per hour. Plaintiff's car stopped "very short" at a cross street intersection. Defendant was unable to stop his car and bumped into the rear of plaintiff's car. At the trial, the court directed a verdict against the defendant, holding that under the proofs the defendant was negligent as a matter of law. The Supreme Court reversed the judgment in favor of the plaintiff and said:
"It is quite likely that the jury would have found negligence as a fact on the part of the defendants. But we are unable to say, and we think that the court below erred in holding, that there was negligence as a matter of law. The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not of itself constitute negligent conduct per se."
Fine & Jackson, etc., Corp. v. Lehigh Valley R.R. Co., 110 N.J.L. 385 (E. & A. 1933) is quite similar, in principle, to the case sub judice. There plaintiff's truck was following, at a speed of ten miles per hour, about eight feet behind another truck on Frelinghuysen Avenue in the City of Newark. As the vehicles approached a grade crossing of the railroad tracks, the watchman suddenly and without warning lowered the crossing gates, causing the driver of the first truck to apply his brakes and come to an abrupt stop, which he did without warning, with the result that plaintiff's truck collided with the rear of the first truck and was damaged. Plaintiff recovered a verdict against the railroad. On appeal, the questions presented were: (1) whether the gateman was negligent, (2) whether his negligence was the proximate cause of the accident, and (3) whether the plaintiff was guilty of contributory negligence. The court affirmed the *274 judgment in favor of the plaintiff against the railroad company; held that the trial court properly left to the jury the question of negligence and contributory negligence (110 N.J.L. at page 388); and the fact that plaintiff drove his truck at a speed of ten miles per hour behind another truck did not constitute negligent conduct per se (110 N.J.L. at page 389).
Higbee v. Atlantic City & Shore R.R. Co., 130 N.J.L. 282 (Sup. Ct. 1943), presents a situation similar in principle to the case sub judice. There plaintiff's auto was following a trolley car in Atlantic City at a distance of about 15 feet behind the trolley car. The trolley car came to a sudden and unexpected stop at a place not established as a "regular stop," and without signal. Plaintiff's auto ran into the rear of the trolley and was damaged. The Supreme Court on appeal affirmed the judgment of the District Court in favor of the plaintiff and said:
"Whether defendant's negligence constituted the sole proximate cause of the collision was a question peculiarly within the province of the trier of the facts. That the automobile was moving in close proximity to the trolley car is not negligence per se. In this class of cases, contributory negligence is almost invariably an issue for the determination of the jury." (130 N.J.L. at page 285.) (Italics mine.)
(3) The plaintiff Henry Szczytko, following at a distance of from eight to twelve feet the truck driven by respondent Marino at a speed of from eight to ten miles per hour, had gotten nearly half-way across Clinton Street when Marino brought his truck to a sudden and abrupt stop in the middle of the intersection without signal or warning. Plaintiff, under the circumstances then existing, had no reason to anticipate such a maneuver on the part of Marino and Marino was certainly under an obligation to give a signal or warning of his intention to stop in such an unusual location. Furthermore, the defendant Daniello, driver of the truck preceding Marino, testified that he applied his brakes gently and slowed up so as to afford the driver behind him an opportunity to protect *275 himself and that he, Daniello, only brought his truck to a stop after he heard the crash behind him. From those proofs, I think a legitimate inference could be drawn that it was unnecessary for the respondent Marino to apply his brakes and come to a sudden and abrupt stop. Were his car under proper control, he should have been able to apply his brakes gently and slow up as did Daniello ahead of him. And had he done so, with an appropriate signal, the accident might well have been avoided.
To paraphrase the language of Justice Heher in Higbee v. Atlantic City & Shore R.R. Co., supra, I think the proofs as to whose negligence caused the accident complained of in the case sub judice was a question peculiarly within the province of the trier of the facts and that, in this class of cases, negligence and contributory negligence is almost invariably an issue for the determination of the jury.
(4) In its reply brief, respondent cites the cases of Layton v. Healy, 12 N.J. Super. 459 (App. Div. 1951), and Riley v. Weigand, 18 N.J. Super. 66 (App. Div. 1952), for the proposition that there was not more than a mere scintilla of evidence in the case sub judice to support any finding of negligence on the part of the respondent and that, the "mere scintilla" of evidence rule does not prevail in this State. The rule is correctly stated but has no application to the case at bar. In the Layton case, there was apparently a head-on collision between two automobiles on a public highway in night-time. At the time of the trial both drivers were deceased and there was no eye-witness to the occurrence of the accident. The court held that the evidence offered respecting the position of the cars on the highway, et cetera, afforded no proof of negligence of the defendant's intestate.
In the Riley case, the plaintiff's intestate, an elderly man, was crossing a highway in the night-time; passed to the rear of a car going in one direction and apparently collided or walked into the lefthand rear of the defendant's automobile traveling in the opposite direction. Defendant testified she did not see the plaintiff until after the accident occurred but *276 she heard a thud towards the left rear side of her car; brought her car to a stop; went back and found the plaintiff's intestate lying in the street. At the close of plaintiff's case the court granted a judgment in favor of the defendant which, on appeal, was affirmed. The Appellate Division held that the evidence in the case did no more than to establish that an accident had occurred and that there was no proof of negligence or proof of facts from which negligence of the defendant could be legitimately inferred.
Respondent in his brief further cites the case of Cox v. Scott, 104 N.J.L. 371 (E. & A. 1927), for the proposition that a bus driver having brought his bus to a stop on the highway, without having given signal or warning of his intention to stop, afforded no proof of negligence where a truck following him collided with the rear of the bus resulting in injury to a bus passenger. The facts of that case, however, are not at all similar to the facts of the case at bar and I think affords no authority in favor of the respondent's position. In that case, the driver of the bus during the daytime was confronted with a farm wagon across the highway; came to a stop a distance of eight to ten feet behind the wagon; looked in his mirror and saw nothing approaching behind him; applied his emergency brakes and came to a stop. He did not put out his hand or give other signal of his intention to stop and a truck following ran into the rear of the bus. In that case, however, the proofs revealed that the truck was following at a distance of 45 to 50 feet back of the bus; that the truck driver was watching the bus and saw it come to a stop; that the truck driver saw the bus immediately it stopped and at once applied his brakes, which failed to work, and the accident resulted. The court held that under the circumstances the bus driver was under no duty to hold out his hand or give other signal of his intention to stop and that it made no difference anyway whether he gave such a signal because the truck driver saw the bus stop at a sufficient distance to enable the truck to come to a stop, but that the proximate cause of the accident was the failure *277 of the brakes on the truck to work. There was no failure of brakes on the plaintiffs' car in the case at bar. Nor in the case at bar was it necessary for the respondent Marino to come to an abrupt stop. He might have applied his brakes gently and slowed up as did Daniello, the driver of the truck ahead of him. Furthermore, the respondent Marino, knowing that he was traveling in heavy congested traffic, was under a duty to give signal or warning of his intention to stop abruptly, where as in the Cox case the bus driver was under no such duty because of the distance of the truck behind him.
(5) For the first time in this appeal, respondent raises the point that the pretrial order controls the issues and questions to be presented at the trial and that the proofs at the trial upon which the plaintiffs rely brought in issues and questions not contemplated in the pretrial order. My examination of the Appendix reveals no objection made at the trial to the proofs offered by the plaintiff because of anything contained in the pretrial order nor was the pretrial order even mentioned by counsel in moving for a judgment of dismissal in favor of the defendant, nor was the pretrial order referred to by the court in granting the motion.
The pretrial order reads in part:
"Marino was compelled to stop suddenly without warning; and as a result the car operated by Henry Szczytko, in which his wife Anna was a passenger, crashed into the rear of the vehicle driven by deft. Marino."
and
"Plfs. will also rely on the allegations of negligence set forth in the complaint."
Paragraphs 4 and 5 of the 13th count of the complaint contain language which clearly charges Marino, and his principals, with the negligence shown by the proofs in this case. The proofs, I think, clearly fell within the bounds of the negligence charged in the 13th count upon which the *278 plaintiffs had the right to rely by the terms of the pretrial order.
There may be some inconsistency in the clauses of the pretrial order quoted above. But the rule concerning pretrial orders should not be interpreted to prevent a recovery in a meritorious case where, as here, the defendants, I think, were given notice in the pretrial order, and its reference to the acts of negligence charged in the complaint, of the particular acts of the defendant-respondent which the plaintiffs charged constituted negligence. But in any event, suffice it to say on this point concerning the limitations in the pretrial order that the question now presented on appeal was not raised below in the trial court and should not be heard now on this appeal. Breheny v. Essex County, 134 N.J.L. 129 (E. & A. 1945); Peff v. Peff, 2 N.J. 513, at 524 (1949).
For the reasons stated, I am of the opinion that the judgment below should be reversed and a venire de novo awarded the plaintiffs.